# SANFORD *v.* SANFORD.

ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 275. Submitted March 30, 1891. — Decided April 13, 1891.

In May, 1871, one S settled upon unsurveyed public lands in Oregon, as an intending preëmptor. In September following he induced his brother to remove from California and make like settlement on adjoining unsurveyed lands and assisted him in building and making other improvements thereon. After official survey and filing of plat thereof in the local land office, each filed a preëmption declaration for the land severally occupied by them. Shortly thereafter, and upon *ex parte* affidavits falsely averring his own residence and occupation thereon, S was. granted permission by the Commissioner of the General Land Office to change his preëmption declaration so as to include the land claimed and occupied by his brother, who, as shown by the findings, was a qualified preëmptor, in actual occupation, with substantial improvements. After issue of patent to S for the land embraced in his amended declaration, he brought ejectment against his brother for possession. The latter thereupon invoked the aid of a court of equity to enjoin S from prosecuting his action of ejectment; to declare the latter trustee of the property and to compel transfer thereof to him. In such action, *Held*,

(1) That while the determination of the land department in a matter cognizable by it in the alienation of lands under the laws of the United States cannot be collaterally impeached, when its enforcement is sought, — where the matter determined is not properly before the department, or its conclusion has been reached from a misconstruction of the law applicable to the case, and it has thus denied to a party rights which upon a correct construction would have been conceded to him, or where misrepresentation and fraud have been practised necessarily affecting its judgment, a court of equity in a proper proceeding will interfere and control its determination so as to secure the just rights of the party injuriously affected. The party acquiring the property under the circumstances mentioned will be charged as a trustee of the rightful owner and be compelled to transfer the property to him.

(2) By section 2261 of the Revised Statutes, and in consonance with the established practice of the land department thereunder, but one preëmption declaration is permitted. The statutory prohibition against a second declaration is unqualified, and applies in all cases, except where a prior claim has prevented the completion of the original entry, or a mistake in the original declaration has occurred without the knowledge or any fault of the claimant.

(3) The tract applied for in the second declaration need not be an entirely separate and distinct parcel to call into effect the prohibition; it is enough if there be such addition to the original land applied for as to justify the designation of it with the addition as a different tract.

(4) The Commissioner of the General Land Office having no authority to allow an amendment by a preëmptioner of his original declaration so as to cover a different tract, the land department acquires by such amendment no jurisdiction to award the additional tract to the claimant. Its action upon such additional tract will not defeat the rights of the occupant thereof.

THIS is a suit in equity between two brothers, whose last name is Sanford, and whose first names are not in the record, but only their initials, C. W. of the plaintiff below and H. W. of the defendant below.

The suit was brought to enjoin proceedings in an action of ejectment commenced by the defendant below, the plaintiff in error here, and to charge the latter as trustee of the property, and compel its transfer to the plaintiff. In the nomenclature of the Code of Oregon, regulating procedure in civil cases, it is termed a cross-bill. It sets forth with much particularity the several matters upon which relief is prayed, the averments respecting which are met by a general and specific denial in the answer of the defendant. A replication having been filed to this answer, the case, by consent of parties, was tried by the court. From its findings it appears, among other things, that in May, 1871, the defendant settled upon unsurveyed land of the United States in Coos County, Oregon, with the intention of taking up 160 acres of it as a preëmption claim, so soon as the same was surveyed; and that in September following, at his solicitation, his brother, the plaintiff below, moved from California, where he then resided, and settled upon adjoining lands, then unsurveyed, also with the intention of taking up the same as a preëmption claim when surveyed. Since then he has resided upon this adjoining land and cultivated and improved it. His settlement was made and the land was cultivated with the knowledge and at the request of the defendant, who pointed out the land to him and aided him in erecting buildings upon it, and in improving it in vari-

ous other ways. In 1879 the land thus settled upon by the parties was surveyed by the United States, and an approved plat thereof was filed in the local land office in July of that year. On the 9th of September following the plaintiff filed a declaratory statement for the parcels occupied by him, as a preëmption claim; and on the 27th of the same month the defendant made a declaratory statement for those which he occupied. Neither of these claims interfered with the other, and except on one occasion, from the time of the settlement, no pretence had been made by either that he had any superior right to the land occupied by the other. Both recognized that they were ultimately to secure the parcels which they severally occupied as their respective preëmption claims, and with that understanding and knowledge the plaintiff had made valuable and lasting improvements upon the land on which he had settled.

On October 14, 1880, more than a year afterwards, the defendant was granted permission by the Commissioner of the General Land Office to amend his declaratory statement so as to include within it the parcels occupied by the plaintiff, which constitute the premises in controversy. This permission was procured upon *ex parte* affidavits of the defendant and two witnesses, without notice to the plaintiff of the proceeding. When they were filed the plaintiff had been, and was then, residing, as stated above, upon the land, which had never been occupied by the defendant. Pursuant to the permission the defendant amended his declaratory statement, and thus brought the premises before the land department as part of his preëmption claim, and was enabled to include them in the patent ultimately obtained by him, in fraud of the rights of the plaintiff. The court also found that at the time of his settlement upon the land in dispute the plaintiff was a qualified preëmptor; that he had made permanent improvements upon it, between January, 1872, and January, 1883, with the knowledge of the defendant, of the value of eighteen hundred dollars; that the affidavits upon which the defendant was allowed to amend his declaratory statement did not show that the plaintiff was in possession of the premises or had made any improve-

ments thereon, but, on the contrary, falsely alleged that the house of the defendant and his improvements were situated thereon; and that thereby the Commissioner of the General Land Office was imposed upon and deceived, and induced to allow the defendant to amend his declaratory statement. And, as a conclusion of law, the court held that the plaintiff was entitled to a decree enjoining proceedings in the action of ejectment, and adjudging that the defendant held the legal title to the land in dispute in trust for him.

In conformity with this conclusion a decree was entered in favor of the plaintiff, and the defendant was required to convey the premises to him. On appeal to the Supreme Court of the State this decree was affirmed; and to review this decree of affirmance the case is brought, on a writ of error, to this court.

*Mr. M. D. Brainard* for plaintiff in error.

*Mr. J. N. Dolph* for defendant in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

By the Code of Oregon the findings of the court in an equity case of this kind are as conclusive as similar findings would be in an action at law. Hill's Annotated Laws of Oregon, sec. 397. They must therefore be taken as correct in the disposition of the question before us, they not having been set aside or qualified by any subsequent action of the court below. And upon them it is contended that the amendment to the declaratory statement of the defendant made in 1884, by which he was enabled to include within it the land in controversy, never occupied or improved by him, but at the time in the possession of the plaintiff, was in effect a second declaration of a preëmptive right to a different tract from the one originally claimed by him, and was allowed in disregard of the express prohibition of the statute, Rev. Stat. § 2261, or upon a plain misconstruction of its provisions, and gave no jurisdiction to the land department to treat the land thus in

cluded as part of his preëmption claim, and that but for the amendment the land would have been awarded to the plaintiff.

It is objected to this contention that the question as to the defendant's right as a preëmption claimant to the land in controversy was a matter to be determined by the land department, where it was considered. It is true the determination of that department in matters cognizable by it, in the alienation of lands under the laws of the United States, cannot be collaterally impeached, where its enforcement is sought. In ejectment the question always is who has the legal title for the demanded premises, not who ought to have it. In such cases the patent of the government issued upon the direction of the land department is unassailable. But whilst the patentee holds the legal title his equitable relations to other parties are not thereby affected. That title, with important qualifications hereafter mentioned, is as much subject to control as the title to land held by him derived from private sources. If one takes a title in his own name, whilst acting as agent, trustee or guardian, or in any other fiduciary capacity, a court of equity will, upon a showing of the fact in an appropriate proceeding, subject the lands to proper trusts in his hands or compel him to transfer the title to the party equitably entitled to it. Nor does it matter whether the party takes the title in his own name in good faith, under the belief that he can thereby better manage the property to the advantage of those for whom he is acting, or in compliance with their wishes, or whether from an intention to defraud them of their rights therein. In either case a court of equity will control the legal title so as to protect the just rights of the true owner. *Townsend* v. *Greeley*, 5 Wall. 326, 335; *Estrada* v. *Murphy*, 19 California, 248. All this is but common knowledge, and the doctrine is constantly invoked for the protection of the rights of parties against the mistake, accident or fraud of agents or parties acting in a fiduciary capacity, and little difficulty is experienced in enforcing it, where the property held is not claimed under the adjudication of a court or other tribunal affirming the title of the holder; as, for instance, upon the determination of a department like that established

to supervise proceedings for the alienation of the public lands. In these latter cases the action of a court of equity is limited so as not to interfere with the rightful exercise of the powers intrusted to the department. The conclusions of the department are not even then open to review for alleged errors in passing upon the weight of evidence presented, for that would be to make a court of equity a court of appeal from its decisions, which was never contemplated.

But where the matters determined are not properly before the department, or its conclusions have been reached from a misconstruction, by its officers, of the law applicable to the cases before it, and it has thus denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practised, necessarily affecting its judgment, then the courts can, in a proper proceeding, interfere and control its determination so as to secure the just rights of parties injuriously affected. *Quinby* v. *Conlan*, 104 U. S. 420, 426; *Baldwin* v. *Stark*, 107 U. S. 463, 465. In such cases a court of equity only exercises its ordinary jurisdiction to prevent injustice from a misconstruction of the law or the machinations of fraud.

The misconstruction referred to must be, as stated, of the law applicable to the case as established. Of this misconstruction we have an instance in *Silver* v. *Ladd*, 7 Wall. 219, where it was held by the Commissioner of the General Land Office and the Secretary of the Interior that the donation act of Oregon did not allow an unmarried woman to take as a settler, on the ground that she was not the head of a family. But this court decided that in this determination the officers misconstrued the law, and upon a bill in equity, filed by her son against subsequent patentees of the United States of the lands, held that relief should be afforded by directing a transfer of the title to him from such patentees.

And the misrepresentations and fraud mentioned necessarily affecting the judgment of the department, must be such as have prevented the unsuccessful party from fully presenting his case, or the officers of the government from fully considering it; such as have imposed upon its jurisdiction or turned.

its attention from the real controversy. It must also appear that but for such imposition and fraud the determination would have been in favor of the plaintiff, and have entitled him to the patent for the land in dispute. *Lee* v. *Johnson*, 116 U. S. 49, 50; *Sparks* v. *Pierce*, 115 U. S. 408, 413; *Vance* v. *Burbank*, 101 U. S. 514, 519.

The case at bar, upon the facts found, is brought fully within the law as thus declared. The defendant in his original declaratory statement did not include the premises in controversy as part of his preëmption claim. It covered only adjoining land. Under the statute he could not make a second declaration for different property. Section 2261 of the Revised Statutes provides that "no person shall be entitled to more than one preëmption right by virtue of the provisions of section 2259 ; nor where a party has filed his declaration of intention to claim the benefit of such provisions for one tract of land, shall he file, at any future time, a second declaration for another tract." Section 2259 referred to designates who may be entitled to preëmption. The inhibition of section 2261 is positive and unconditional. The tract applied for in the second declaration need not be an entirely separate and distinct parcel to call into effect the prohibition ; it is enough if there be such addition to the original land applied for as to justify the designation of it, with the addition, as a different tract. With the filing of the first declaration the applicant is limited to the land designated, whether less or different from what he supposed he could claim, or what he may subsequently desire to acquire. The prohibition of the statute is without qualification or exception, and the rights of the preëmptor must be measured by it. *Baldwin* v. *Stark*, 107 U. S. 463, 466. Such has been the uniform ruling of the land department, except where a prior claim has prevented the completion of the original entry, or a mistake in the first declaration has occurred without the knowledge or any fault of the claimant.

In the *Case of J. B. Raymond*, 2 Land Dec. 854, the claimant filed a declaratory statement in February, 1880, for a quarter section of land in Kansas, and in April, 1883, he applied to the local land office for permission to make a second

filing for the same land, alleging as a reason therefor that he had made valuable improvements on his claim, but, having failed to raise any crops on account of the drought, was unable to pay for the land within the time prescribed by law. He, therefore, desired to file a second declaratory statement for the same land, for the better protection of his rights in the premises. The local land office rejected the application, and the Commissioner approved of the decision. Subsequently, the claimant asked permission to file another declaration for the same or other land, but it met with a similar rejection, and the case on both applications was brought before the Interior Department, where the decision of the Commissioner in both instances was affirmed. Mr. Teller, then Secretary, held that the claimant's application to file a new declaration for other land was properly denied upon the second clause of the statute, and that his application to file for the same land was properly denied upon the first clause, he having attempted to exercise the one preëmptive right which was alone permissible.

In *Allen* v. *Baird*, 6 Land Dec. 298, it appeared that Allen had made a declaratory statement for a tract of land as a preëmptor, in March, 1883, although he had made such declaration for another tract in August, 1880. It was sought to avoid the former filing upon the ground that at the date thereof he was not twenty-one years of age, and hence the filing was a nullity and no bar to a second one. The Commissioner held that the second filing was illegal, and upon appeal to the Interior Department his decision was affirmed. In disposing of the case, Mr. Lamar, then Secretary, after observing that Allen had stated in his first filing that he was over twenty-one years of age, when he knew the statement was untrue, and that, the land being subject to settlement and entry, he could not be heard to allege that the first filing was illegal, said : " The question of second filing was carefully considered by my predecessor, Secretary Teller, in the *Case of J. B. Raymond*, 2 Land Dec. 854, wherein it was held, that under the provision of section 2261, Revised Statutes, a preëmptor may file but one declaratory statement for land free to settle

ment and entry. This ruling has been uniformly followed, and the only exception is where the preëmptor is unable to perfect his entry on account of some prior claim, and there is no fault on his part." Reference is then made to other decisions of the department, and to the case of *Baldwin* v. *Stark*, cited above, where the positive and unconditional character of the inhibition of the statute is recognized by this court.

In allowing the defendant in this case to amend his declaratory statement, the commissioner of the General Land Office assumed a power which was not vested in him. No circumstances existed which prevented the first declaration from bringing into operation the express prohibition of the statute against a second one. The claimant knew perfectly the character and extent of the land originally claimed by him. He was at the time under no misapprehension on that subject. The commissioner, in allowing the amendment to cover a much larger tract than at first claimed, authorized a second declaration for a different tract, which was not permissible. If that officer was of the opinion that the statute did not apply to an amendment, thus enlarging the original declaration, he misconstrued its provisions. Without such enlargement, the premises in controversy would not have been brought before the land department as a part of the claim of the defendant, and no obstacle would have been presented to the award of a patent to the plaintiff for the land. By the amendment, therefore, the department acquired no more jurisdiction to award to the defendant the tract not embraced by his original declaration than it had to award to him any other tract never entered by him as a preëmptioner in the local land office. Its subsequent action upon the additional tract could not defeat the rights of the plaintiff to the premises.

Besides the want of authority in the commissioner to allow under the form of an amendment an enlargement of the preëmption claim, the manner in which that officer was imposed upon taints the transaction as one of fraud and misrepresentation on the part of the claimant, by which material facts were concealed from the department. A court of equity has jurisdiction in such a case to compel the transfer to the plaintiff of

property which, but for.such fraud and. misrepresentation, would have been awarded to him, and of which he was thereby wrongfully deprived.

*Decree affirmed.*