## GILDNER v. HALL.

(District Court, D. Oregon. October 25, 1915.)

No. 6868.

1. PUBLIC LANDS ⊖⟶111—"PROTEST"—RIGHT TO PATENT—CONSTRUCTION OF STATUTE.

Under Act March 3, 1891, c. 561, § 7, 26 Stat. 1098 (Comp. St. 1913, § 5113), providing that after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead, etc., laws, "and when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent * * * and the same shall be issued to him," a "protest," within the meaning of the act, must allege issuable facts which, if true, would defeat the entry, and a mere report of an agent of the Department that he had information that an entry was not in good faith, and that there was a general rumor that the law had not been complied with, and requesting that no patent issue, not followed by any proceeding, does not authorize the refusal to issue a patent after the expiration of the two years.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 310; Dec. Dig. ⊖⟶111.

For other definitions, see Words and Phrases, First and Second Series, Protest.]

2. PUBLIC LANDS ⊖⟶125—ESTABLISHMENT OF TRUST—JURISDICTION OF COURTS.

After the title to public land has passed from the government, the jurisdiction of a court of equity may be invoked to determine if the patentee holds it in trust for another, and if it appears that the party claiming the equity had established his right to the land under a true construction of the acts of Congress, but that by an erroneous construction the patent has issued to another, the court will correct the mistake.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 341; Dec. Dig. ⊖⟶125.]

In Equity. Suit by B. Gildner against Amy E. Hall. Decree for complainant.

Veazie, McCourt & Veazie, of Portland, Or., for complainant.
Walter H. Evans and Arthur A. Murphy, both of Portland, Or., for defendant.

BEAN, District Judge. This is a suit to charge the holder of the legal title of real estate under a patent from the United States as trustee for the complainant. The land in controversy is situate in what was formerly the Siletz Indian reservation. The facts as they appear from the complaint are that on September 25, 1900, one Haynes entered the land under the homestead law. On March 3, 1902, he made final commutation proof of residence and cultivation, which proof was accepted as sufficient by the Land Department, and on March 7, 1902, a receiver's final receipt was issued to him. Patent was withheld, however, and on July 10, 1908, Haynes' entry was contested by one Chandler. The entryman moved to dismiss the contest and for the issuance of patent to him, on the ground that under the proviso of section 7 of the act of

Congress of March 3, 1891 (26 Stat. 1095), he was entitled to his patent, and the Department was without jurisdiction to entertain the contest. The objection was overruled and the entry subsequently canceled. Thereafter the defendant, Hall, made entry on the land and received a patent therefor.

[1] The complainant now claims that the Land Department erred, as a matter of law, in holding that it had jurisdiction to entertain the Chandler contest and in canceling his entry and awarding the title to another. The act of March 3, 1891, provides:

"That after the lapse of two years from the date of the issuance of the receiver's receipt upon the final entry of any tract of land under the homestead * * * laws," etc., "when there shall be no pending contest or protest against the validity of such entry, the entryman shall be entitled to a patent conveying the land by him entered, and the same shall be issued to him."

Under this law Haynes' right to a patent accrued and became absolute on March 7, 1904, unless there was at that time a valid pending contest or protest against the validity of his entry. In the absence of such a contest or protest, the jurisdiction of the Land Department became functus officio, save for the ministerial act of executing and delivering the patent. The Land Department ruled, however, that it had jurisdiction to entertain the Chandler contest, more than six years after the receiver's final receipt had been issued to the entryman, because, on November 4, 1903, Special Agent Hobbs, who had been directed to make an investigation of all entries within the former Siletz reservation, telegraphed the Commissioner of the General Land Office, requesting that no patents be issued for land within such area, and on November 7th of the same year made a written report, sending a list of entries, and stating that Haynes had mortgaged his land on March 6, 1902; that he (the agent) had reliable information that said entry and others were not made in good faith, but were made in the interest of other parties; that it was the general rumor that the entrymen mentioned in the list never complied with the homestead law; that he (the agent) requested that no patents issue pending further investigation.

I think the court is justified, from its knowledge of the general practice of the Land Department, in assuming that the report of Hobbs and his communication was for the confidential information of the officers of the Department, and was not brought to the knowledge or attention of the entryman until after the institution of the Chandler contest, more than six years after the issuance of the receiver's final receipt. And in my judgment it cannot be regarded or deemed a protest within the meaning of the act of 1891. That act was passed by Congress to relieve the hardships of a situation existing in the General Land Office, caused by the suspension of a large number of entries "on vague and insufficient suggestions of fraud and noncompliance with the law," which had created a practical blockade in the issuance of patents, to the serious prejudice of bona fide claimants under the public land laws, and to prevent a repetition thereof. Jacob A. Harris, 42 Land Dec. Dept. Int. 611. It contemplated that a protest, within the meaning of the law, should contain allegations of issuable facts, which, if true, would defeat the entry and warrant its cancellation. And such was the construction

227 F.—45

given the law by the Land Department immediately after its adoption, and long adhered to. In the instructions to chiefs of divisions issued by the Commissioner of the General Land Office, and approved by the Secretary of the Interior on May 8, 1891 (12 Land Dec. Dept. Int. 450), it is said:

"The word 'protest,' as here used, shall be interpreted as meaning any proceeding by any person who, under the rules of practice, seeks to defeat an entry on the ground that the entryman is guilty of fraud, either actual or constructive, in connection therewith, or has failed to comply with the law or rules of the Department governing the same, or that there was, at the time he claims that his rights attached, a claimant for the tract desired to be entered, having prior rights or superior equities thereto."

And on July 1, 1891, Secretary of the Interior Noble, in a letter to the Commissioner concerning the law and the former instruction to the Department, stated that:

"The word 'proceedings,' as used herein and in the circular of May 8, 1891 (12 Land Dec. Dept. Int. 450), will be construed as including any action, order, or judgment had or made in your office canceling an entry, holding it for cancellation, or which requires something more to be done by the entryman to duly complete and perfect his entry, and without which the entry would necessarily be canceled. Every suspended entry, where the entryman has not been duly notified thereof, and required to furnish proof necessary to complete the entry within two years from the date of the final receipt, will be released from suspension and adjudicated under the foregoing rules." 13 Land Dec. Dept. Int. 1.

And in Acting Secretary Ryan's instructions of June 3, 1904, it is said:

"To be either a contest or a protest, there must be a charge of specific facts which, if true, would defeat the entry, and upon which the entryman or party affected may take issue and demand a hearing. In cases investigated by special agents of your office, where the agent has reported sufficient facts to justify cancellation of the entry, such report is a proceeding that prevents confirmation of an entry under the act." 33 Land Dec. Dept. Int. 10.

In the course of time, however, the Department, for reasons apparently sufficient to itself, and doubtless with a desire to prevent what it deemed the spoliation of the public domain, modified the construction originally given the law, and finally held in the Trazanga Case, 40 Land Dec. Dept. Int. 300, that the provisions of section 7 of the act of 1891 had no reference to proceedings of the United States or its officers or agents in respect to entries of the claims therein specified. This decision, however, was overruled by the Acting Secretary of the Interior in the Harris Case, 42 Land Dec. Dept. Int. 611. And in the Stump Case (decided December 13, 1913) 42 Land Dec. Dept. Int. 566, he held that a report of a special agent that from his investigation "it is reasonable to believe that these entries were not made in good faith by the entrymen for the purpose of making homes thereon, and as the lands are all in a district that is heavily timbered it seems evident that the purpose is to acquire these timber lands in the interest of one transferee, under cover of the homestead law," was not a protest within the meaning of the law, because it contained no issuable statement affecting the entry.

Now, the Hobbs report of 1903 contains no statement or allegations of any issuable fact affecting the validity of Haynes' entry which, if

true, would warrant its cancellation, or upon which the entryman could have joined issue. He only reports that he had reasonable information that the entry was not made in good faith, and that it was the general rumor that the entryman had not complied with the homestead law. These statements may have been true, and yet the entry perfectly valid, and the entryman entitled to his patent. The report contained no allegations of any specific fact showing, or tending to show, that the entry was fraudulent, or that the entryman had not complied with the law, and does not show even a prima facie reason for the cancellation of the entry.

[2] The defendant's counsel insist, however, that whether the Hobbs report was a protest within the meaning of the law was a question for the Land Department, and that its decision is binding on the courts. In support of this position they cite Fisher v. United States, 37 App. D. C. 436, and United States v. Fisher, 39 App. D. C. 158. These cases were proceedings by mandamus to compel the Secretary of the Interior to issue patents for certain lands to the petitioners, on the ground that they were entitled thereto under the provisions of the act of 1891, and that the Secretary erred in holding that the report of a special agent in the particular cases referred to was a protest within the meaning of the law. The court held, in accordance with the settled rule that courts will not interfere by mandamus with the officers of the Land Department in the exercise of their duties while the matter remains in their hands for decision (Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485), that it would not assume to review the action of the Department.

But here the legal title to the land has passed from the government. The purpose of the suit is to charge the holder thereof as trustee for the complainant. The question has now become one of private rights, and it is well settled that, after the title to public land has passed from the government, the jurisdiction of a court of equity may be invoked to ascertain if the patentee holds it in trust for another. In such case the decisions of the Land Department on questions of fact, unaffected by fraud or mistake, are conclusive on the courts. But if it appears that the party claiming the equity had established his right to the land to the satisfaction of the Land Department in the true construction of the acts of Congress, but that by an erroneous construction the patent has issued to another, the court will correct the mistake. Johnson v. Towsley, supra; Sanford v. Sanford, 139 U. S. 642, 11 Sup. Ct. 666, 35 L. Ed. 290; Howe v. Parker, 190 Fed. 738, 111 C. C. A. 466.

And such is the case at bar. Assuming the facts to be true as found by the Land Department, it erred as a matter of law in holding that a valid protest against the issuance of a patent to the entryman had been filed within the time required by law.

It follows that the motion to dismiss should be overruled; and it is so ordered.