279 P.2d 624

**Frances DALE and Grace L. Levers, Plaintiffs-Appellants,**

**v.**

**Ralph LANNOM, E. A. Hanson and E. B. Todhunter, Defendants-Appellees.**

**No. 5812.**

Supreme Court of New Mexico.

Jan. 22, 1955.

Harry L. Bigbee, Donnan Stephenson, Thomas F. McKenna, Santa Fe, for appellants.

Hervey, Dow & Hinkle, George H. Hunker, Jr., Howard C. Bratton, Roswell, for appellees.

LUJAN, Justice.

This is an appeal from an order of the District Court of Lea County dismissing plaintiffs' first amended complaint, with prejudice, for the reason, among others, that it failed to state a claim against defendants upon which relief could be granted. The parties will be referred to as they appeared in the court below.

It must be borne in mind that the interest in the land here being litigated is of the public domain. "The Congress shall have Power to dispose of and make needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * *." Article IV, § 3, Cl. 2. It can prohibit absolutely or fix the terms on which its property may be used. Light v. United States, 220 U.S. 523, 536, 31 S.Ct. 485, 488, 55 L.Ed. 570. To provide for the use of government lands by the public Congress has enacted statutes conferring upon executive officers power to handle the administrative details, to prescribe rules and regulations governing the use of said lands in the various localities in order to carry out and fulfill the purposes of the statute.

The Secretary of the Interior is authorized by the Leasing Act, "to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this Act." C. 85, § 32, 41 Stat. 450, 30 U.S.C. §

189, 30 U.S.C.A. § 189, which is entitled "An Act To promote the mining of coal, phosphate, oil, oil shale, gas, and sodium on the public domain." C. 85, 41 Stat. 437. The Act provides that the Secretary of the Interior shall "when the lands to be leased are not within any known geological structure of a producing oil or gas field, the person first making application for the lease who is qualified to hold a lease under said sections shall be entitled to a lease of such lands without competitive bidding. * * * Leases issued under this section shall be for a primary term of five years and shall continue so long thereafter as oil or gas is produced in paying quantities." 30 U.S.C. § 226, 30 U.S.C.A. § 226. The Act further provides that the record title holder of an oil and gas lease shall have a preference right over others to a new lease for the same land, "that upon the expiration of the five-year term of any non-competitive oil and gas lease issued pursuant to the provisions of the Act of August 21, 1935 (49 Stat. 674), amending the Act of February 25, 1920, and maintained in accordance with the applicable statutory requirements and regulations, their record title holder shall be entitled to a preference right over others to a new lease for the same land pursuant to the provisions of section 17 of the Act of February 25, 1920, as amended, and under such rules and regulations as are then in force, if he shall file an application therefor *within ninety* days prior to the date of the expiration of the lease. * * *" § 1 of the Act of Congress of July 29, 1942, 30 U.S.C. § 226b, 56 Stat. 726. (Emphasis supplied.)

The facts which gave rise to this litigation are substantially as follows: On January 1, 1939, an oil and gas lease was issued to one Ray E. Levers for the land in question, which was due to expire on December 31, 1943. Prior to the expiration date, lessee died intestate, and Grace L. Levers, his widow, and Frances Dale, his daughter, succeeded to his interest in the lease as his sole heirs. On December 4, 1943, within ninety days of the expiration date of the base lease, Grace L. Levers and Frances Dale applied for a first preference right lease on the same land. On January 1, 1944 a first preference right oil and gas lease was issued to plaintiffs which was due to expire on December 31, 1948. On June 28, 1949, plaintiffs filed an application for a second preference right lease. On September 1, 1951, an oil and gas lease was issued to the defendant Ralph Lannom.

Under their point one plaintiffs argue that: "As a matter of law, the term of appellants' lease Las Cruces 062242 did not commence to run until January, 1946, and therefore they were the owners of a preference right to a new lease when they filed their application therefor and were then entitled to a new lease."

Pursuant to § 1 of the Act of Congress of July 29, 1942, 30 U.S.C. § 226b, 56 Stat.

726, there was issued to the plaintiffs, at the expiration of the base lease issued to Ray E. Levers, on January 1, 1939, a first preference right oil and gas lease which read, in part, as follows:

"This indenture of lease, entered into, in triplicate, *as of* the first day of January, 1944, by and between the United States of America * * * and Grace L. Levers and Frances Dale, * * *" (Emphasis supplied.)

Under the terms of this lease plaintiffs agreed "to abide by and conform to any and all reasonable regulations of the Secretary of the Interior now or hereafter in force, all of which regulations are made a part and condition of this lease."

This lease was not signed until January 15, 1946, and was delivered to plaintiffs on January 29, 1946.

Relying on the record as it appeared in the District Land Office, which showed that an oil and gas lease had been made by the United States to the plaintiffs for a term of five years commencing on January 1, 1944, the defendant, Ralph Lannom, on January 3, 1949, filed his application for a lease under the Mineral Act and on September 1, 1951, a lease was issued to him noncompetitively.

On June 28, 1949, approximately six months after the first preference right lease had expired, plaintiffs filed an application for a second preference right lease, which stated, in part, as follows:

"During the existence of the oil and gas lease issued under Las Cruces Serial No. 062242 these applicants caused all rentals thereon to be paid when due and *had full intention* of applying for a preference right at the time that they became eligible to do so under the laws of the United States. By reason of failure to receive notice of any character of the termination of said lease or of their right in the premises to apply for a preference right lease, this application was not filed prior to expiration of the primary term of the lease aforesaid." (Emphasis supplied.)

This application was not acted upon until August 21, 1951, when the manager of the land and survey office of Santa Fe rendered a decision holding that said application could not be treated as a preference right application because it was not filed within the 90-day period prior to the expiration date of the base lease, and that it could not be regarded as a regular application. The decision stated that the right of appeal is allowed.

Feeling aggrieved by the decision of the manager of the land and survey office plaintiffs sought relief, by appeal, through the Department of the Interior. On behalf of the Secretary of the Interior, the Solicitor held that the date appearing on the face of the lease, to wit, January 1, 1944, was controlling and that plaintiffs had failed to

timely file their application for a preference right lease. Among other things he said:

"The appellants' principal contention is that the Levers-Dale lease was not actually issued until January 15, 1946, and, consequently, that its 5 year term did not commence to run until that date. To hold that the term of the lease began to run from January 1, 1944, would, the appellants assert, result in their having had a lease that actually ran for less than three years, instead of the 5-year period provided by law.

"There has never been any provision in section 1 of the act of July 29, 1942, or in section 17 of the Mineral Leasing Act (30 U.S.C., 1946 ed., sec. 226) governing the date which should be given to an oil and gas lease upon its issuance. Moreover, there was no departmental regulation on this subject at the time (December 4, 1943) when Mr. Levers and Mrs. Dale applied for their lease or at the time (January 15, 1946) when the lease was actually issued. Throughout that period, it was the uniform practice of the Department to date preference-right leases as of the day following the expiration date of the lease upon which the preference-right lease was based. This practice was followed in order to permit continuity of lease operations.

"The Levers-Dale lease was a preference-right lease based upon a lease which expired on December 31, 1943. Consequently, in accordance with the then prevailing practice, the Levers-Dale lease was issued as of January 1, 1944.

"The Levers-Dale lease plainly stated that it was 'entered into * * * as of the first day of January, 1944.' It was accepted by the lessees on that basis. It is now too late for the lessees, after the lease term accepted by them has expired, to contend that the lease term did not commence until January 15, 1946.

\*     \*     \*     \*     \*     \*

"If the appellants had made their request during the life of their lease, there might have been some basis for considering whether equitable consideration warranted the redating of their lease. However, the appellants accepted their lease with the January 1, 1944, date. After the expiration date fixed by the terms of the lease, December 31, 1948, the lease ceased to exist as a matter of law. There is nothing, therefore, upon which the Department can act at this time."

The question presented, then, is, when did the term of the first preference right lease commence to run? Plaintiffs insist that it commenced to run as of January 15, 1946, the date the lease was signed, while defendants contend that it began to run as

of January 1, 1944, that being the date when the lease was entered into. We are of opinion, and so hold, that the date as of which the lease was made is the dominant date, and not the date when it was actually signed. Any other ruling would introduce endless controversy and confusion into the handling of oil and gas leases by a governmental agency, a business now enormous in this state. See, Greer v. Stanolind Oil & Gas Company, 10 Cir., 200 F.2d 920.

Plaintiffs having failed to apply for a second preference right lease within ninety days from the expiration date of their first preference right lease, as required by law, they are now in no position to complain of the action taken by the Bureau of Land Management.

It is perfectly clear that when plaintiffs made and filed their application for a second preference right lease they were relying on the date first appearing on their lease and not the date when it was signed, otherwise they would not have stated therein that they "had full intention of applying for a preference right lease at the time that they became eligible to do so under the laws of the United States." Certainly they could not have been relying on January 15, 1946, as the date when the lease commenced to run, for the lease under this date had been in existence only three years and one month, and had approximately twenty months to run before they would become eligible to apply for a second preference right lease,

that is within ninety days of the expiration date of the lease, to wit, January 14, 1951.

An examination of the complaint discloses that plaintiffs failed to state a claim upon which relief can be granted. Because (1) they do not allege that they filed their application with the Bureau of Land Management as is required by the statute. The Act of July 29, 1942, 56 Stat. 726, 30 U.S.C. § 226b, provides:

"That upon the expiration of the five-year term of any noncompetitive oil and gas lease issued pursuant to the provisions of the Act of August 21, 1935 (49 Stat. 674), amending the Act of February 25, 1920, and maintained in accordance with the applicable statutory requirements and regulations, the record titleholder shall be entitled to a preference right over others to a new lease for the same land pursuant to the provisions of Section 17 of the Act of February 25, 1920, as amended, and under such rules and regulations as are then in force, *if he shall file an application therefor within ninety days prior to the date of the expiration of the lease.*" * * * (Emphasis supplied.)

In fact the complaint shows on its face that the application was filed on June 28, 1949, which was subsequent to the expiration date of the base lease. And (2) the complaint does not allege that plaintiffs' lease LC 062242 was maintained in accord-

ance with the applicable statutory requirements and regulations. In this respect the complaint alleges:

"4. That all rentals required to be paid under the terms of Exhibit A were fully paid during the term of said lease."

"9. The Secretary of the Interior found the facts to be, and in the proceedings before the Bureau of Land Management, United States Department of the Interior, it was undisputed that: (a) Plaintiffs were the owners of oil and gas Lease LC 062242, issued under and pursuant to the Act of July 29, 1942 (56 Stat. 726); (b) The term of said lease was for a period of five years; (c) Said lease was not executed in behalf of the lessor and not issued by the lessor before January 15, 1946; (d) No statute or regulation authorized the lessor to make the effective date of oil and gas leases, issued pursuant to the Act of July 29, 1942 (56 Stat. 726), precede the date of the actual execution and of the issuance thereof by the lossor; (e) On June 28, 1949, the Plaintiffs filed application LC 072005 for a preference right lease based on LC 062242; (f) The grounds upon which said application LC 072005 for a preference right lease was denied was that the effective date of LC 062242 was January 1, 1944; (g) On January 3, 1949, application LC 069762, embrac-ing the lands described in paragraph one of this Complaint, was filed by Defendant Ralph Lannom and Lease LC 069762 issued to Ralph Lannom, dated September 1, 1951. On the foregoing facts the Secretary of the Interior, through the Bureau of Land Management, Department of the Interior, denied Plaintiffs' application for a new preference right lease to the lands heretofore described and issued LC 069762 to Défendant Ralph Lannom, to Plaintiffs' prejudice and defendants' unjust enrichment. Said action was taken under a mistake of fact or law, or both."

Thus, it will be seen that plaintiffs failed to allege that it was undisputed or that the Secretary of the Interior found that they maintained their lease in good standing in accordance with the applicable statutory requirements and regulations. They likewise failed to state that the Secretary of the Interior made any findings on this proposition. The allegation appearing in paragraph four of their complaint as to rentals is one of fact, but it is not an allegation of the facts as found by the Secretary of the Interior or as undisputed in the proceedings before him.

In the case of Van Patten v. Boyd, 20 N.M. 250, 150 P. 917, 919, which involved a patent, it was held that the failure to allege that all facts upon which the court can clearly see that the applicant was entitled to a patent except for a mistake of law were

undisputed or were found by the Department of the Interior is fatal. If the law were otherwise, the court would be constantly relitigating facts as found by the Department of the Interior. This the court will not do. The court went on to say:

"It is to be presumed that in every contested case heard by the officers of the Land Department, each party claims that he is legally entitled to the patent, or to enter the land, and that upon the facts as they actually exist his right should be recognized and protected. Each party produces witnesses to establish what he contends to be the facts. Upon such evidence the department renders its decision for the one or the other. If it were permissible for the defeated party to go into a court of equity and set up what he conceives the facts to be, without being required to allege that such facts were undisputed, or were found to exist by the officers of the department, every case decided by this tribunal would be subject to review by the courts. 'The misconstruction (of the law) referred to must be, as stated, of the law applicable to the case as established' (Sanford v. Sanford, 139 U.S. 642, 11 S.Ct. 666, 35 L.Ed. 290), and not upon the facts of the case as one or the other party may honestly believe and claim them to be. This being true, it is essential for the attacking party to allege and set forth in his complaint the facts, as found by the department, or to allege that such facts were undisputed, in order to invest a court of equity with jurisdiction to entertain his application for relief. The issue to be tendered by him is that upon the facts as found by the department, if there is a conflict in the evidence, or upon the undisputed facts, the law was misapplied, not that the law was misapplied upon the actual facts in the case, as the complaining party might prove such facts to be upon a trial in the district court. * * *"

Applying the same principle declared in the above case, we hold that the court did not commit error in dismissing the plaintiffs' complaint.

In view of our disposition herein made of this appeal, we deem it unnecessary to determine whether or not the United States was an indispensable party to the suit. Compare United States ex rel. Roughton, v. Ickes, 69 App.D.C. 324, 101 F.2d 248, 253, and Mann v. Whitely, 36 N.M. 1, 6 P. 2d 468.

The judgment of the lower court will be affirmed.

It is so ordered.

COMPTON, C. J., and SADLER, J., concur.

McGHEE and KIKER, JJ., concur in the result.

McGHEE and KIKER, Justices (concurring in the result).

The judgment should be affirmed because of the lack of an indispensable party, the United States of America.