[Civil No. 2249.    Filed May 22, 1925.]

[236 Pac. 684.]

MARY ELLIS GUERIN, Appellant, v. AMERICAN SMELTING & REFINING COMPANY, a Corporation; MICHAEL IRISH, PHIL C. BRANNEN, Administrator of the Estate of JOHN G. BAXTER, Deceased; JULIA BAXTER, JOHN J. BAXTER; GREGORY BAXTER, THOMAS P. BAXTER, ALEXANDER ROSSI; JOSEPH FLANNERY, Executor of the Last Will of WILLIAM REID, Deceased; and CONSOLIDATED NATIONAL BANK OF TUCSON, ARIZONA, a National Banking Association, Appellees.

1. LIMITATION OF ACTIONS—SUIT FOR RELIEF BASED ON FRAUD, NOT INSTITUTED WITHIN THREE YEARS FROM DISCOVERY OF FRAUD, IS BARRED.—Suit for an accounting for moneys realized from operating mining claim by defendants, in which plaintiff had an interest,

which was alleged to have been fraudulently absorbed by defendants, was barred under Civil Code of 1913, paragraph 711, if plaintiff discovered the facts constituting the alleged fraud, or by the exercise of reasonable diligence might have discovered such facts, but did not commence and prosecute her action within three years thereafter.

2. TENANCY IN COMMON—COTENANT, NOT PROFITING BY ALLEGED FRAUDULENT RELOCATION OF MINING CLAIM, HELD NOT SUBJECT TO ACCOUNT FOR PROCEEDS.—A cotenant holding a fractional interest in a mining claim, who did not profit by an alleged fraudulent relocation of the claim done to absorb the fractional interest of plaintiff's deceased, *held* not subject to a suit to account for the proceeds, in the absence of a showing he obtained an excess of the profits beyond his fractional interest by reason of the relocation.

3. TRUSTS—MINING CLAIMANT, FRAUDULENTLY ABSORBING FRACTIONAL INTEREST OF DECEASED COTENANT IN CLAIM, AS ALLEGED, HOLDS LEGAL TITLE OF LATTER IN TRUST FOR HIM AND HIS HEIRS.—A mining claimant, who by relocation fraudulently absorbed the fractional interest of plaintiff's deceased, a cotenant, in the claim, must be regarded as holding the legal title of deceased's interest in trust for him and his heirs, and in duty bound to account for any profits received from such interest.

4. TENANCY IN COMMON—SOLE HEIR OF TENANT IN COMMON WAS TENANT IN COMMON WITH CO-OWNERS, WHOSE PEACEABLE POSSESSION WAS HERS.—A sole heir of a tenant in common in a mining claim was a tenant in common with the other co-owners, and their possession was that of such heir, and inured to her benefit or the benefit of deceased's estate, until such co-owners, by some notice, actual or constructive, indicated that such possession was hostile or adverse.

5. TENANCY IN COMMON—ACTS OF COTENANT HELD CONSTRUCTIVE IF NOT ACTUAL NOTICE OF HOSTILE OR ADVERSE CLAIM TO INTEREST OF PLAINTIFF'S DECEASED AS COTENANT. — Where plaintiff's deceased held a fractional interest in a mining claim, the act of a cotenant in relocating the claim in another name, leaving deceased's interest out, and the extraction and selling of the ores and converting the receipts therefor, *held* constructive, if not actual, notice of a hostile or adverse claim to deceased's interest.

6. LIMITATION OF ACTIONS — WHEN AGGRIEVED PARTY IS DEEMED TO HAVE NOTICE OF FRAUD SO AS TO COMMENCE RUNNING OF STATUTE

3.   See 18 R. C. L. 1197.

4.   See 7 R. C. L. 820.

6.   Accrual of cause of action so as to commence running of statute of limitations in actions for fraud, see note in 4 Am. St. Rep. 531. See, also, 17 R. C. L. 741.

OF LIMITATIONS STATED.—A party, aggrieved by fraud, is deemed to have notice thereof within Civil Code of 1913, paragraph 711, so as to start the running of the latter when he or she, by reason of the facts and circumstances, could have discovered the fraud in the exercise of reasonable care and diligence.

7. LIMITATION OF ACTIONS—DISCOVERY OF FRAUD WILL BE DEEMED TO DATE FROM TIME EXERCISE OF REASONABLE DILIGENCE WOULD HAVE DISCOVERED IT. — Discovery of fraud within Civil Code of 1913, paragraph 711, will be deemed to date from time exercise of reasonable diligence would have discovered it.

8. MINES AND MINERALS — LOCATORS' TITLE TO UNPATENTED MINING CLAIM CONSTITUTED POSSESSORY TITLE ONLY, CONTINUANCE OF WHICH DEPENDED ON COMPLIANCE BY LOCATORS WITH FEDERAL STATUTE REQUIRING DOING OF ANNUAL ASSESSMENT WORK.—Locators' title to unpatented mining claim constituted possessory title only, continuance of which depended upon compliance by locators with U. S. Comp. Stats., section 4620, requiring doing of annual assessment work.

9. MINES AND MINERALS — RECORDED NOTICE OF LOCATION OF MINING CLAIM DOES NOT CONSTITUTE PRIMA FACIE EVIDENCE OF TITLE.— Recorded notice of location of mining claim does not constitute *prima facie* evidence of title, and could become such only on proof of performance by locators of all the acts necessary to a proper mining location.

10. LIMITATION OF ACTIONS—PARTY RESIDING IN FOREIGN COUNTRY IS SUBJECT TO OPERATION OF STATUTE OF LIMITATION TO SAME EXTENT AS RESIDENT OF ARIZONA.—Party residing in foreign country is subject to operation of statute of limitation (Civ. Code 1913, par. 711), relative to suit for fraud, to same extent as resident of Arizona.

11. EQUITY — PARTY SEEKING EQUITY MUST SHOW INEQUITABLE CONDUCT OF ADVERSE PARTY AND HIS OWN FREEDOM FROM WRONGDOING OR INEXCUSABLE NEGLECT AND INATTENTION.—Party seeking equity must show inequitable conduct of adverse party and his own freedom from wrongdoing or inexcusable neglect and inattention.

12. LIMITATION OF ACTIONS—SUIT BASED ON FRAUD TO ACCOUNT FOR MONEYS REALIZED FROM OPERATING MINING CLAIM HELD BARRED AS NOT HAVING BEEN INSTITUTED WITHIN REQUIRED STATUTORY PERIOD.—A suit based on fraud, for an accounting for moneys realized from operating a mining claim by defendants, who it was alleged participated in a fraudulent absorption of fractional interest belonging to plaintiff's deceased, *held* barred under three year limitation prescribed by Civil Code of 1913, paragraph 711; alleged ex-

cuses offered by plaintiff for her inattention to her interest, and her consequent lack of actual knowledge of what was taking place not being sufficient to entitle her to equitable relief.

See (1) 37 C. J., p. 929.   (2) 38 Cyc., p. 42.   (3) 38 Cyc., p. 42; 39 Cyc., pp. 172, 175.   (4) 38 Cyc., p. 21.   (5) 38 Cyc., p. 37. (6) 37 C. J., p. 939.   (7) 37 C. J., p. 939.   (8) 27 Cyc., p. 589. (9) 27 Cyc., p. 578 (1926 Anno.).   (10) 37 C. J., p. 988.   (11) 21 C. J., p. 193.   (12) 37 C. J., pp. 969, 970.

APPEAL from a judgment of the Superior Court of the County of Pima. Richard Lamson, Judge. Affirmed.

Mr. James D. Barry and Mr. Gerald Jones, for Appellant.

Mr. John B. Wright, for Appellees.

ROSS, J.—The appellant, referred to herein as plaintiff, brought this suit against the defendants for an accounting of moneys received in the operation of a mining claim, claiming that she was the equitable owner of an interest therein, the legal title being in the defendants.

The defendants demurred to the complaint on the ground that on its face it appeared the action was barred by the statute of limitations. The demurrers being sustained, and the plaintiff choosing to stand upon the complaint, judgment of dismissal was entered. The appeal is from the order sustaining demurrers and from the judgment.

The complaint may be summarized as follows: The plaintiff by marriage at Tempe, Arizona, on February 14, 1907, became the wife of John Ellis, a British citizen, and with him went to Scotland, where he died November 20, 1909, leaving surviving him the plaintiff as his sole heir. John Ellis, through whom plaintiff claims, Michael Irish, and John G. Baxter (since deceased) for many years prior to November 20, 1909, were engaged in the joint enterprise of ac-

quiring mining property as equal partners, and as such trusted and confided fully in each other. That at such date they had acquired and owned a large number of undeveloped mining claims, situate in Pima mining district, Pima county, Arizona, including a one-half interest (one-sixth each) in the Confidence mining claim, the notice of location of which was recorded in the office of the county recorder of Pima county, in Book GG, Records of Mines, page 400; the other one-half being owned by William Reid, now deceased, and Alexander Rossi, in equal parts. That shortly before April 1, 1914, Rossi and Reid optioned their interest in said mining claim to one E. G. Bush, who, together with Baxter in his own right and as the representative of Irish, went on to mining claim to explore it and to extract and sell ore therefrom, and continued such operations until on or about April 30, 1914. That on or about this last-mentioned date Baxter, Reid and Rossi relocated the Confidence mining claim under the name of the Minnie mining claim, and recorded the notice thereof with the county recorder of Pima county, in Book VV, Records of Mines, page 495, in which notice their interests were apportioned two-sixths to Baxter, one-sixth to Irish, one-fourth to Rossi and one-fourth to Reid. That the relocation was made without the plaintiff's knowledge or consent, and for the purpose of depriving her of any right, title, or interest in the Confidence claim. That the relocation was made as the Minnie for the purpose of concealing from plaintiff, and to prevent her from learning, that her interest in the Confidence had been relocated; the location notice making no reference to the Confidence claim. That on April 3, 1915, without plaintiff's knowledge or consent, Baxter, Irish, Rossi, and Reid made an amended location of the Minnie, in the same interests as above, and made no reference to the Confidence, which amended location was duly recorded. That

on August 4, ·1915, Bush took up his option of the
Rossi and Reid interests and received a conveyance
·thereof with full knowledge of plaintiff's rights.
That during 1914 and 1915 Baxter, Irish and Bush,
as plaintiff is informed and believes, realized from
the operation of said mining claim net proceeds of
$83,544.70 or thereabouts.  That on July 19, 1915,
Bush, Irish and Baxter contracted to sell same and
the Portland mining claim (of no substantial value)
to the American Smelting & Refining Company for
$400,000, of which $100,000 was paid in cash and
$42,453.62 in royalties from ores extracted from min-
ing claim.  That said company realized to itself, over
and above all expenses of extraction and reduction,
from the ores of mine, a sum in excess of $200,000,
and quit and surrendered mine to Bush, Baxter and
Irish in September, 1916, who thereafter operated it
and realized from ores extracted, above costs, ap-
proximately $30,127.91.  It is alleged that the Ameri-
can Smelting & Refining Company had knowledge of
all the above facts.

On January 22, 1922, the plaintiff filed her original
complaint against defendants, praying that they be
required to account· to her for her interest in the
Confidence mining claim, and therein excuses her de-
lay in not taking such step sooner, upon the follow-
ing grounds: That at the time of her husband's death
(1909) she was eighteen years old, unaccustomed to
business, living in Edinburgh, Scotland, as defendants
well knew; that in 1912 she employed, in Edinburgh,
an attorney to make inquiries into property left by
John Ellis in Arizona, who communicated with Bax-
ter; that at that time the Confidence mining claim
was of no known value; that in 1913 she consulted
the American Consul at Edinburgh with the view of
ascertaining, if possible, what property her deceased
husband left in Arizona; that neither discovered nor
informed her of any property that required her at-

tention; that she had no means to come to the United States; that in 1916 she wrote defendant Irish for information, and received a reply in which he advised her that she could have no interest in mining claims in America because John Ellis was not a citizen of the United States; that she believed and relied upon said statement; that shortly after the mining claim was relocated as the Minnie the Great War broke out, and during its continuance it was practically impossible for her to attend properly to her business or to come to Arizona; that in 1918 her father tried to sell his property in Scotland to raise means to come to Arizona and examine into her business, but was unable to raise funds; that in December, 1919, she married in Scotland her present husband, Aclan Chiron Guerin, a resident and citizen of Australia, and moved to the latter country, where she has since resided with her husband; that she came to Tucson, Arizona, in November, 1921, and for the first time discovered the fraudulent transactions herein set forth; that during all of said period plaintiff knew of the intimate relations existing among Baxter, Irish and Ellis and had confidence in Baxter and Irish, and believed they would advise her should said mining claim become valuable by reason of the discovery of ore. When she discovered her confidence had been betrayed, she immediately employed an attorney and brought this suit.

It is claimed by the defendants, and that is the basis of their demurrers, that the cause of action alleged is barred by limitation of time, as provided in several paragraphs of the Statutes of 1913, to wit, 695, 697, 710, 711, 716, 882 and 889, but we do not deem it necessary to consider the effect of any of these statutes as a bar except paragraph 711, the applicable part of which reads as follows:

"There shall be commenced and prosecuted within three years after the cause of action shall have ac-

crued, and not afterward, all actions or suits in courts of the following description:

\*     \*     \*     \*     \*     \*     \*     \*     \*

"(3) Actions for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The action is one to require an accounting for moneys realized from operating mining claim by defendants, and, while plaintiff's right to have such accounting depends upon whether she was the equitable owner of some interest in mine, the determination of that question favorably to her would not necessarily entitle her to the relief sought. As the title or interest claimed by plaintiff in mine is only incidentally involved, we will not undertake to decide whether she has lost such title or interest by limitation but will confine ourselves to a consideration of the bar interposed to the personal action for an accounting. The action is one for relief on the grounds of fraud, and is barred, regardless of the ownership of mine, if plaintiff discovered the facts constituting the fraud, or by the exercise of reasonable diligence might have discovered such facts, but did not commence and prosecute her action within three years thereafter.

An inspection of the complaint is enough to show that the Rossi and Reid interests could not upon any theory be impressed with a trust in favor of the plaintiff. No confidential or trust relation is alleged as existing between them and Ellis, and it is shown that their interests were not in any way enlarged or changed by the relocation, or that they ever received from the operation of the mining claim one cent more than they were entitled to receive.

While defendant Irish sustained a relationship towards Ellis forbidding him to take any advantage

of the latter, it is shown that his interest in the Confidence mining claim and in the relocated Minnie was identical. He had a one-sixth interest in the Confidence, and his interest in the Minnie was a one-sixth interest and no more. He could not have profited by the relocation, and, unless it was shown that he obtained, by reason of the operation of the mine, an excess of one-sixth of the profits, he cannot be asked to account to anyone.

In the relocation, Baxter's interest was enlarged from one-sixth to two-sixths, and Ellis was dropped out. It was Baxter, if anyone, who profited by the relocation, and who violated his duty to the plaintiff. It was the one-sixth interest that Baxter gained by the relocation that belonged to the estate of Ellis, and it is the administrator of Baxter's estate and the distributees thereof, or his assigns, if anyone, who should account to plaintiff for profits realized in operating mine.

Under the facts pleaded, Ellis and Baxter, with Irish, Rossi and Reid, were cotenants in the ownership of the Confidence mine, and, when it was relocated as the Minnie, Baxter's absorption of Ellis' interest was only so in form, and thereafter he must be regarded as holding the legal title of the Ellis interest in trust for Ellis and his heirs. This principle is well settled. *Turner* v. *Sawyer,* 150 U. S. 578, 37 L. Ed. 1189, 14 Sup. Ct. Rep. 192, 18 R. C. L. 1197, § 103; *Hunt* v. *Patchin* (C. C.), 35 Fed. 816; *Lakin* v. *Sierra Buttes Co.* (C. C.), 25 Fed. 337; *Speed* v.*McCarthy,* 181 U. S. 269, 45 L. Ed. 855, 21 Sup. Ct. Rep. 613 (see, also, Rose's U. S. Notes).

Up to April 30, 1914, when the Ellis estate was located out of the Confidence mining claim, Ellis was, and after his death his heir was, a tenant in common with the other co-owners, and their possession was that of such heir and inured to her benefit or the benefit of the Ellis estate, until such co-owners, by

some notice, actual or constructive, indicated that such possession was hostile or adverse. *Faubel* v. *McFarland,* 144 Cal. 717, 78 Pac. 261; 2 Lindley on Mines, 3d ed., 949, § 406. The act of relocating the claim in another name in April, 1914, leaving the Ellis interests out, and the extraction and selling of the ores and converting the receipts therefor, were certainly constructive if not actual notice of a hostile or adverse claim by Baxter to the Ellis interests.

After the location of the Confidence ground as the Minnie, under the well-settled rules of equity, Baxter held the Ellis interest as the trustee of Ellis or the Ellis estate, and owed the duty to account for any profits received from that source. The trusteeship under the facts is a creation of equity jurisprudence to prevent one occupying a confidential relation to another from profiting by his own wrongful and tortious act. 1 Perry on Trusts, 6th ed., § 27, defines a trust growing out of facts like the facts of this case as follows:

"A constructive trust is one that arises when a person, clothed with some fiduciary character, by fraud or otherwise gains some advantage to himself. Courts construe this to be an advantage for the *cestui que trust* or a constructive trust."

The trust relation being determined to exist, the question is whether the statutes of limitations will run against it, and, if so, when. That the statute does apply to constructive trusts seems to be the prevailing doctrine. 2 Perry on Trusts, 6th ed., § 865, states the rule as follows:

"It has been urged that the statute cannot apply in favor of persons who become trustees by construction of law; as, where a person is construed into a trustee of property which he has fraudulently obtained, or where a trust estate is traced into his hands, or where a resulting trust arises; and that the *cestui que trust* is not precluded, in such cases, from his

remedy by lapse of time. But the later authorities establish the doctrine that the statute applies in such cases."

The author cites a great number of cases in support of his statement of the later doctrine. Where the trust is constructive or implied, it is not necessary, in order to set the statute in motion that the trustee should have denied or repudiated the trust. In such case the statute begins to run when the wrong complained of was done, unless a different time is fixed by the statute. *Hecht* v. *Slaney,* 72 Cal. 363, 14 Pac. 88; *Broder* v. *Conklin,* 121 Cal. 282, 53 Pac. 701. Under our statute, quoted above, the limitation does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud complained of. This statute is not peculiar to Arizona. Its counterpart exists in many of the states, and has often received the attention of the courts. The doctrine deducible from the decisions is that the aggrieved party need not have actual notice of the fraudulent act to start the running of the statute, but, if the facts and circumstances were such as in the exercise of reasonable care and diligence he should have discovered the fraud, he is deemed to have notice. Where ignorance of the fraud is due to negligence or indifference or inattention, its discovery will be deemed to date from the time when one exercising reasonable diligence would have discovered it. Measured by this rule, what may be said of plaintiff's attitude toward her mining interests in Arizona? Her rights originated with her marriage to Ellis in 1907, and became active on his death in 1909. The fraudulent act charged is the relocating on April 30, 1914, of the Confidence mining claim as the Minnie; the purpose in doing so, it is alleged, being to conceal from her and to prevent her from learning that her interest in the Confidence had been relocated.

The Confidence being unpatented, the locators' title was a possessory title only, and its continuance depended upon a compliance by the locators with the United States statute (U. S. Comp. Stats., § 4620) requiring the doing of annual assessment work. The recorded notice of location of a mining claim is not even. *prima facie* evidence of title, and could become such only upon proof of a performance by the locators of all the acts necessary to a proper mining location. While the notice and recordation are necessary steps to acquiring title, it is but one of the sources to which one must look to ascertain the validity of an unpatented mining claim. In this case an examination of the recorded notice of the Confidence mining claim would not have shown it to be a valid, subsisting claim. That fact could have been established in one way only—by going on the ground. If plaintiff had gone upon the ground in 1914 after the relocation she would have learned of the acts of defendants that she now claims to be a fraud on her rights. Passing the fact that her cotenants, up to April 30, 1914, did the representation work on claim, and in thus protecting their interests likewise protected hers, without her contributing or offering to contribute her share of the expenses, it is obvious that if after that date she had, either in person or by agent, gone upon the ground she would have discovered that it was no longer the Confidence claim. She was not misled by any affirmative conduct, act, or statement of defendants. What they did was open and above board and easy of ascertainment. Irish, one of the co-owners, in 1916 wrote her she could have no interest in mining claims in America because Ellis was not a citizen of the United States. Although the reason suggested was not exactly correct, the statement should have been a notice and warning to her to investigate the situation. She had lived in Arizona, and must have known something of the local conditions. A letter to

an attorney in Tucson any time after April, 1914, would have doubtless brought to her information of what was being done with the Confidence mining claim. If plaintiff had been a resident of Arizona, and had not contributed to the annual assessments from 1909 to 1914, and had made no objection to the location of the Confidence ground as the Minnie in the latter year, nor offered to help develop the ground, and had remained silent · until January, 1922, it is hardly conceivable that a court of equity would lend a willing ear to her statement that she did not dis- · cover that the Confidence mining claim had been located as the Minnie in April, 1914. Under the law, her rights, duties and obligations are measured by the same yardstick as if she had resided in Arizona.

In *Williamson* v. *Beardsley,* 137 Fed. 467, 69 C. C. A. 615, the court had before it a statute that authorized the bringing of an action to set aside a sale of real estate by an administrator ''at any time within three years from the discovery of the fraud,'' and to escape the bar of the statute the plaintiffs relied upon the fact that they did not live in Utah, where the property was situate and the act complained of took place. The court commented upon such excuse as follows:

''The sole excuse presented in the bills of complaint is that they were nonresidents of and absent from Utah, and such excuse is insufficient either in law or equity. Whether time runs against the assertion of their claims cannot be made to depend upon their proximity to or remoteness from the seat of the court whose orders are in question. There is no such quality in distance from the location of public records as would enable us to say that those living within the state are bound to diligence while those living in neighboring states may rest secure without care or. inquiry.''

Upon the question of. what constitutes disseisin of one cotenant, by another cotenant, and the notice of

adverse possession by the latter, Circuit Judge TAFT (now Chief Justice TAFT), in *Elder* v. *McClaskey,* 70 Fed. 529, reading at page 542, 17 C. C. A. 251, 264, said:

"It is not necessary for him to give actual notice of this ouster or disseising of his cotenant, to him. He must, in the language of the authorities, 'bring it home' to his cotenant. But he may do this by conduct, the implication of which cannot escape the notice of the world about him, or of any one, though not a resident in the neighborhood, who has an interest in the property, and exercises that degree of attention in respect to what is his that the law presumes in every owner. Said Mr. Justice BRADLEY in *Re Broderick's Will,* 21 Wall. 503, 519, 22 L. Ed. 599, 605: 'Parties cannot, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all transactions of the past. The world must move on, and those who claim an interest in persons and things must be charged with the knowledge of their status and condition, and of the vicissitudes to which they are subject.' "

In *Bower* v. *Stein,* 177 Fed. 673, 101 C. C. A. 299, the action had for its purpose the setting aside of a foreclosure sale, and, on the question of delay in bringing the proceeding, the court said:

"It is no excuse for such delay that the plaintiff is without means or resides in a distant state."

In *Phelps* v. *Grady,* 168 Cal. 80, 141 Pac. 928, on the question of laches, the court said, "The fact that they lived at a distance is of course no excuse," and quoted from *Naddo* v. *Bardon* (C. C.), 47 Fed. 782, as follows:

"The conclusion is almost irresistible that the complainant might, and he perhaps would, have continued to sleep quietly and peacefully upon his supposed rights had it not been for the quickening influences that have, within a comparatively recent period, ma-

terially appreciated the value of this property and brought it into prominence.''

We think the excuse offered by plaintiff for her inattention to her interests in Arizona, and her consequent lack of actual knowledge of what was taking place, are not sufficient to entitle her to equitable relief. One seeking equity should be required to present a state of facts showing his adversary guilty of inequitable conduct and himself free from wrongdoing or inexcusable neglect and inattention. In *Johnston v. Standard Mining Co.*, 148 U. S. 360, 13 Sup. Ct. Rep. 585, 37 L. Ed. 480, the rights of a co-owner in a mining claim who delayed in asserting them until the property had been proved to be of great value, were involved, and the court said:

''While there is no direct or positive testimony that plaintiff had knowledge of what was taking place with respect to the title or development of the property, the circumstances were such as to put him upon inquiry; and the law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.''

And quoted from *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587, 592, 23 L. Ed. 328, as follows:

''Property worth thousands to-day is worth nothing to-morrow; and that which to-day would sell for a thousand dollars at its fair value may, by the natural changes of a week, or the energy and courage of desperate enterprise, in the same time be made to yield that much every day. The injustice, therefore, is obvious of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit.''

The court in that case (*Johnston* v. *Standard M. Co.*) added:

. " . . . Where property has been developed ·by the courage and energy and at the expense of the defendants, courts will look with disfavor upon the claims of those who have lain idle while awaiting the results of this development, and will require, not only clear proof of fraud, but prompt assertion of plaintiff's rights."

The defendants' occupation of the Confidence ground as the Minnie, after April 30, 1914, was open and notorious. On that date they made a record of their claim. Anyone could by slight care have found out the exact situation. Nothing was hidden or concealed beyond detection, if at all. Discovery was not made by plaintiff because of no effort. The plaintiff's claim of concealment shows upon its face that nothing material was concealed. It is not even alleged that plaintiff was in fact deceived by the omission to state in the Minnie location notice that it was a relocation of the Confidence claim, or that ·she ever examined or caused to be examined the records of mines of Pima county from 1909 to 1921. Consequently, if the notice of location of the Minnie had recited that it was a relocation of the Confidence, she would not have discovered it. The plaintiff's complaint does not exhibit a state of facts entitling her to any relief.

" . . . A party seeking to avoid the bar of a statute on account of fraud must aver and show that he used due diligence to detect it. . . . Concealment . . . which will avoid the statute must go beyond mere silence. It must be something done to prevent discovery. . . . Concealment . . . must be the result of positive acts. . . . Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. . . . The circumstances of the discovery must be fully stated and proved, and the delay which has occurred

must be shown to be consistent with the requisite diligence.'' *Wood* v. *Carpenter*, 101 U. S. 135, 25 L. Ed. 807 (quoted in *Phelps* v. *Grady*, 168 Cal. 73, 141 Pac. 926).

We are clearly of the opinion that plaintiff's cause of action had accrued more than three years before she commenced her suit, and that the demurrer was properly sustained.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.