Loretta Barton, Plaintiff, and Appeal of J. J. Danaher, Appellant, v. Montrose Avenue Hospital and Sanitarium et al., Appellees.

Gen. No. 44,094.

Opinion filed February 4, 1948. Released for publication February 20, 1948.

DEFREES, FISKE, O'BRIEN & THOMSON and JOHN C. GARRIOTT, JR., all of Chicago, for appellant; JOHN C. GARRIOTT, JR., of Chicago, of counsel.

POSANSKI, LELIVELT & BARON, of Chicago, for certain appellee; ROMAN E. POSANSKI, of Chicago, and WILLIAM JACOBS, of South Holland, of counsel.

BALFORD QUINTIN SHIELDS, of Chicago, for certain other appellee.

Mr. Justice Kiley delivered the opinion of the court.

This is an action to foreclose the lien of a real estate mortgage made by the Hospital. The chancellor after a reference and two re-references to a master, sustained exceptions to the report. The decree, though in Danaher's favor, denied foreclosure and ordered payment of the amount paid by him for the mortgage and costs, expenses and fees. He has appealed.

In 1936 Wiedeman furnished money to O'Connor to purchase the Hospital. He thereafter advanced money for operating expenses. In 1937, bondholders under a Hospital mortgage, threatened foreclosure. Wiedeman bought all of the $13,600 outstanding bonds and averted the suit. During this time Danaher, O'Connor's attorney, was president, O'Connor, secretary, and Loretta Barton, O'Connor's sister-in-law, an employee of the Hospital. In 1941, the bonds in default, Wiedeman directed Loretta Barton to institute foreclosure in her name.

In 1943, O'Connor stipulated to an order defaulting the Hospital. The cause was referred to a master July 1943. It was placed upon the Military Calendar until June 1945. The master in his original report in September 1945, found that Mamie Kleffman, Administratrix, did not produce competent evidence to support her defense that the mortgage notes did not represent a real debt; that Loretta Barton was the legal holder and owner of the mortgage notes entitled to foreclosure; and that there was due her $25,034.81. He recommended a foreclosure decree. March 18th, 1946 the chancellor sustained the exception of the Hospital to the finding of ownership and the recommendation. The prior default of the Hospital was set aside and it was given leave to answer. The case was re-referred on the issue of ownership of the mortgage notes.

March 21, Danaher was given leave to become a plaintiff. He filed an amendment to the complaint al-

leging his equitable ownership of the notes since
May 15, 1945. The Hospital answered denying default
in payment of notes and Loretta Barton's ownership.
It admitted Danaher's equitable ownership, but denied
it began May 15, 1945 and averred he was owner when
the suit was filed. It denied that Mamie Kleffman,
Administratrix, had any interest and denied any right
in "plaintiff" to a lien or foreclosure.

The master in his second report found that Wiede-
man was legal owner of the mortgage when suit was
filed; that Danaher had resigned as president and di-
rector of the Hospital in May 1942; that Danaher had
bought the mortgage from Wiedeman May 15, 1945 for
$15,000 and had been legal owner since then; that the
Hospital produced an agreement between Wiedeman
and Barton and O'Connor and Danaher made April 6,
1942 to sustain its defense that Danaher had purchased
the mortgage pursuant to the agreement made while
he was a fiduciary; and that the agreement confirmed
ownership in Wiedeman when the suit was filed. He
again recommended foreclosure.

The chancellor again referred the cause to the master
to hear "witness of said defendant" on the question
of Danaher's purchase of the notes. The master made
further a finding that Danaher upon resigning in
May 1942 requested the Hospital to substitute other
attorneys for Danaher and Garriott in Hospital legal
matters. The master stood by his earlier finding of
ownership and again recommended foreclosure. The
Hospital objected that the master should have found
Danaher was a fiduciary and trustee of the mortgage
paper for the Hospital under his purchase, and that
the Hospital was the true owner of the paper, subject
only to Danaher's claim for the money he paid Wiede-
man.

The chancellor on June 13, heard testimony of
Wiedeman upon the sale to Danaher. August 7, the

chancellor rendered a written decision, stating that the principal question in the case was whether Danaher's purchase May, 1945 was pursuant to the April 1942 agreement. He found Danaher was a beneficiary not entitled to gain by the transaction, sustained exceptions to the report, again referred the cause to the master to determine the amount due Danaher. If the amount due was paid when determined, the lien of the mortgage was to be discharged. If not, the lien was to be foreclosed. December 6, 1946, the chancellor found that there was due Danaher $19,202.63 and ordered the Hospital to pay him within 5 days. January 3, 1947, tender of that sum was made but refused and the amount was deposited with the clerk of the Superior Court and the lien of the mortgage was ordered discharged. The appeal is from the orders of December 6 and January 3.

The order of December 6 overruled exceptions of Mamie Kleffman, Administratrix, to the finding of the master that she had no interest in the mortgage and had produced no competent evidence in support of her defense. She has not appealed from that order. She has filed a brief as appellee, but no cross appeal. There is, therefore, nothing presented for our consideration with respect to that order.

▮ The question before us is whether Danaher should be denied foreclosure of the lien of the mortgage and any gain arising out of his purchase of the mortgage paper, because of a fiduciary relationship with the Hospital. The chancellor decided the question in the affirmative. No witness except Wiedeman testified before the chancellor. They all testified before the master. Wiedeman's testimony before the chancellor was no substantial addition to his testimony before the master. We feel safe in saying that under these circumstances, we are not bound by the authori-

ties cited by the Hospital limiting us to the question whether the chancellor's decision was against the manifest weight of the evidence. We think our function is to determine whether under the circumstances in this case the chancellor's decision was a proper one under the law and the evidence. *Jones v. Koepke,* 387 Ill. 97; and *Fischer v. Queen Hedwig's Polish National Catholic Church,* 327 Ill. App. 215.

The mortgage paper was purchased by Danaher in May 1945, three years after his resignation as President and Director, and withdrawal as attorney of the Hospital. This severance of his official connection terminated the fiduciary relationship [Fletcher on Corps. (Perm. Ed.) Vol. III, Sec. 860; 19 C. J. S. Sec. 761; *Duncomb v. New York, H. & N. R. Co.,* 84 N. Y. 190], unless the transaction in May 1945 was merely the consummation of an agreement, by Wiedeman to sell to Danaher, made in the contract of April 1942 when the latter was still an official of the Hospital. The chancellor's decision rested on a finding that the May 1945 transaction had its origin in the prior contract and, that consequently, the fiduciary relationship tainted the later event.

The April agreement purported to settle for services rendered and to be rendered by Danaher and O'Connor. In it Wiedeman promised to divide between them equally any sum in excess of Ten Thousand ($10,000) Dollars, received by him as a result of any sale of the mortgage notes. The testimony shows that the Hospital at the time was not a profitable venture. O'Connor lived at the Hospital. Danaher had no salary, fees or other income from it. L. Barton had little or no salary. Under these circumstances the agreement was presumably made to enable Wiedeman to keep, through O'Connor, the Hospital in operation and keep his loss on the real estate mortgage at a minimum and to make

it possible for Danaher and O'Connor to obtain some recompense.

The mortgage at that time was owned by Wiedeman. He had a right to make whatever lawful agreement he wished with respect to it. A study of the April agreement shows that he was under no obligation not to sell it to whomever he pleased. He was not obliged to refrain from selling it at any price he wished. His sole obligation was to divide the excess over $10,000 in any sale price equally between Danaher and O'Connor. Danaher had no obligation whatsoever by the terms of the agreement. He says he had no right in it either to purchase or to compel a sale to him of the mortgage paper. We agree.

Wiedeman testified that the sale to Danaher had no connection with the April agreement and that he offered the paper for sale to O'Connor shortly before selling it to Danaher. The latter testified that he purchased the paper at Wiedeman's solicitation. We find that the purchase by Danaher did not originate in, in the sense of being connected with, the April 1942 agreement.

In view of the foregoing conclusion, we find that Danaher did not, while president and a director of the Hospital, engage to buy the mortgage paper. There was, consequently, no violation of a fiduciary relationship in the making of the contract in May 1945. He had resigned his official positions in May of 1942 and had no official connection with the Hospital in 1945. *Winger v. Chicago Bank & Trust Co.*, 394 Ill. 94 and *Farwell v. Pyle National Headlight Co.*, 289 Ill. 157 do not therefore apply. We see no question here of trust arising out of the May 1945 transaction. The fact that Danaher and Garriott in 1941 chose to remain out of the foreclosure suit, and their employment of Attorney Churan to file it does not alter the case; nei-

ther does Danaher's resignation after the April agreement. During this time O'Connor held practically all the stock of the Hospital corporation and Wiedeman was a principal creditor. It cannot be said, at least on the record before us, that either of them or anyone else was harmed by the conduct of Danaher and Garriott or that O'Connor disapproved.

There is no evidence that Danaher, while a fiduciary, gained information which enabled him to buy the mortgage paper so as to gain an unfair advantage over an insolvent principal as *In re McCrory Stores Incorporated,* 127 Fed. Supp. 267. There is no evidence that the Hospital was insolvent. The record shows that it deposited $19,000 cash under the order appealed from. Moreover, O'Connor, the principal stockholder and president of the Hospital, shortly before Danaher's purchase, was given an opportunity to purchase the mortgage paper. Since the purchase had no connection with the April 1942 contract and since the record does not show that Danaher kept in close touch after resigning and thereafter resumed his official status, the case of *Rose v. First National Bank of Stigler,* 93 Okla. 120 does not apply. We have been unable to find the case of *Glen Allen Mining Co. v. Park Galena Mining Co.* in the volume cited.

We see no need to consider any other point raised.

For the reasons given the orders appealed from are reversed and the cause is remanded with directions to the chancellor to enter a decree in conformity with the reports of the master recommending foreclosure.

*Reversed and remanded with directions.*

Lewe, P. J., and Burke, J., concur.