Mile-O-Mo Fishing Club, Inc., a Corporation, Plaintiff-Appellant, v. Robert F. Noble and Theda Noble, Defendants-Appellees.

Gen. No. 65–18.

Fifth District.

August 9, 1965.

Jacoby, Patton & Manns, Virgil M. Jacoby, and Emerson Baetz, all of Alton, for appellant.

Hamilton C. Jones, and Griffith & Hoefert, of Alton, for appellees.

GOLDENHERSH, J.

Plaintiff, Mile-O-Mo Fishing Club, Inc., is a corporation organized under the "General Not for Profit Corporation Act." (Ill Rev Stats c 32, § 163a et seq., 1963.) For about 14 years prior to 1963, it had leased from Owens Illinois Glass Company, hereafter referred to as Owens-Illinois, a 2.4 acre parcel of land situated in Godfrey Township, in Madison County. It had erected a fishing club house on the premises for the use of its members and their guests.

The defendant, Robert Noble, was a member of the club. In April 1962, the president of plaintiff resigned and defendant was elected to serve the unexpired term, terminating in December. Defendant, Theda Noble, is a party to this suit because she is the record owner, in joint tenancy with the defendant, Robert Noble, of the property herein involved. Unless otherwise indicated, the term "defendant," means the defendant, Robert Noble.

In its complaint, filed in the Circuit Court of Madison County, plaintiff alleges that during the years 1961, 1962 and 1963, it had engaged in negotiations with Owens-Illinois for the purchase of the above described land, that defendant, with knowledge of these negotiations, and in violation of his fiduciary obligations as an officer of plaintiff, had procured the conveyance of the land to himself and his wife, the defendant, Theda Noble. Plaintiff prayed that the court decree that the defendants hold title as trustees for plaintiff, that an accounting be had of the funds expended by defendants to acquire the real estate, and upon payment by plaintiff to defendants of the sum found to have been so expended, defendants be required to convey to plaintiff all of their right, title and interest in the land. In their answer, defendants denied any violation of defendant, Robert Noble's, duties as an officer of plaintiff, and alleged as an affirmative defense, that defendant had offered to assist plaintiff in purchasing the property, his offer had been refused, that defendants were informed and believed that plaintiff was unable to purchase the real estate, that they were further informed and believed that Owens-Illinois desired to sell the land, that its desire to sell was public knowledge and that other persons not in any manner connected with plaintiff were also interested in purchasing the property. After trial of the case, the court found that there was no fraud committed by defendants, and further, that there was no abuse of confidential relationship which would justify a constructive trust. The court entered judgment dismissing the complaint, and extinguishing any claims, liens or charges against the land by plaintiff or anyone claiming by, through or under it. This appeal followed.

The evidence shows that for some period of time, plaintiff's members had discussed the advisability of purchasing the land from Owens-Illinois. While plaintiff was president, during early November of 1962, he had the land appraised and learned that he could arrange a loan of $7,000 through Alton Savings and Loan Association. Owens-Illinois wanted $4,500 for the land but would not sell unless arrangements were made to settle the claim of Springman Lumber Company, hereinafter called Springman, in the amount of $4,700, for materials used in 1958 to improve the club house. Defendant reported this to the club, and offered to buy the property in his name, and then sell or lease it to the plaintiff, as plaintiff might elect. This offer was made at the November 1962 meeting, and was rejected by the members present. The only reference to the transaction in the minutes of the meeting states, "Motion Made to have Fred White to get a written statement from B L L office."

At the December meeting the matter was further discussed. The minutes reflect the following entry, "Motion made and seconded to authorize the securing of a loan to buy land and pay debt of building." The motion was carried and Fred White was appointed "Chairman of Committee." At this same meeting, plaintiff held its annual election of officers, and defendant was defeated in his bid for re-election to the presidency. Thereafter he did not attend meetings and took no part in club activities.

Fred White, in his capacity of committee chairman, talked with an officer of Piasa First Federal Savings and Loan in Alton. He was advised that a loan could be made, provided ten members of plaintiff would guarantee the indebtedness. The minutes of the March, 1963, meeting show that a motion "to go ahead with the ten signature loan with Piasa First Federal Savings and Loan Association" was seconded and unanimously

54

carried. Although no official action is recorded in January or February 1963, Fred White testified that he had continued to work on the task of getting the required ten signatures.

In March of 1963, White went to see Lucian H. Laird, an employee of Owens-Illinois, in charge of real estate. He testified that Laird said it "had been practically sold to the club, that Noble is buying it in his name for you." He testified that Laird stated that if Noble would agree, it could "go to the club." White stated that he tried to see Noble, but without success.

Defendant, Robert Noble, testified that when he first contacted Owens-Illinois in September, he went there representing the club. On his first contact with the Alton Savings and Loan, he told the officer with whom he talked that he was going to make the loan for the club, in his name, and was going to buy it in his name. When he told the club members of his plan, they rejected it. He did not advise the building and loan of the rejection of his proposal, he "just let it drop." As president, he knew the club was still interested in the land and, in fact, the appointment of White to head a committee to work out the deal was made after that. He testified that late in February 1963, he again saw Mr. Laird and thereafter talked with an attorney representing Owens-Illinois. He stated that he told the attorney that he was going to buy the property in his own name, and the club would have no part in it. He borrowed $7,000 on the property and $2,500 on his residence, paid Owens-Illinois $4,500 and escrowed $4,400 to guarantee payment of the Springman claim. Defendant stated that his knowledge of the ownership of the land and the building was acquired from the discussions at the meetings, at some of which meetings he served as president.

Mr. Laird testified that on September 19, 1962, defendant had offered to purchase the property. Laird

had talked to members of plaintiff and asked them to make arrangements to buy. Owens-Illinois wanted to sell the property because it was concerned about its public relations, and possible damage suits. It had no restrictions as to who could buy. It was primarily concerned with selling to plaintiff because plaintiff had leased the property for some time. Mr. Laird thought defendant was dealing as president of plaintiff, and for plaintiff. He could not recall whether he had told several of plaintiff's members that when defendant acquired the real estate, plaintiff was getting it. The price of $4,500 was based on an appraisal of the land, and did not include the building.

The lease under which plaintiff had occupied the premises was not offered in evidence, and the record does not disclose whether plaintiff has continued in possession of the property.

Plaintiff contends that defendant, as an officer of plaintiff, is its fiduciary and trustee, that defendant may not, for private gain employ knowledge obtained by virtue of his position, that this transaction was commenced while defendant was such officer and trustee, and although consummated subsequent to the termination of his official status, his purchase of the property results in his holding title as constructive trustee for plaintiff, and defendants should be required to convey the property to the plaintiff.

Defendants contend that plaintiffs have failed to show a breach of confidential relationship by the requisite clear and convincing evidence, and that no fraud, or abuse of a fiduciary relationship, has been proved.

■ ■ The rule is well established in Illinois that officers and directors of a business corporation occupy a fiduciary relation to the corporation. Shlensky v. South Parkway Bldg. Corp., 19 Ill2d 268, 166 NE2d

793. The statutory provisions pertinent to the management of the affairs of a corporation not for profit (c 32, §§ 163a16, 163a22) by its directors and officers, are similar to those applicable to business corporations. (C 32, §§ 157.33, 157.43.) The officers and directors of a not for profit corporation, should therefore, be charged with the same degree of fidelity to the interests of the corporation as are the officers and directors of a business corporation.

██ ██ A constructive trust may be presumed to arise out of a breach of a fiduciary relation. Winger v. Chicago Bank & Trust Co., 394 Ill 94, 67 NE2d 265. This rule applies not only to transactions consummated while the fiduciary relationship exists, but also to transactions consummated after it has ended, if the transactions began during the existence of the relationship or were founded on information or knowledge acquired during the relationship. Barton v. Montrose Ave. Hospital & Sanitarium, 333 Ill App 309, 77 NE2d 423.

 The cases cited by defendants are clearly distinguishable from the case at bar. Those cases hold that where a fiduciary relationship is asserted as the basis for imposing a constructive trust, the burden of proving such relationship is on him who asserts it, and must be shown by clear and convincing proof. Here, however, because defendant was an officer of the plaintiff corporation, the fiduciary relationship exists as a matter of law. Kester v. Crilly, 405 Ill 425, 91 NE2d 419; Henry's Drive-In, Inc. v. Anderson, 37 Ill App2d 113, 185 NE2d 103. Where the existence of a fiduciary relation is established, the law presumes that any transaction between the parties by which the fiduciary has profited, is fraudulent. The burden rests on the fiduciary to overcome the presumption by clear and convincing proof that he has exercised good faith. Clark v. Clark, 398 Ill 592, 76 NE2d 446. If the

fiduciary acquires legal title to property, the knowledge of which came to him in his fiduciary capacity, and the ownership of which is of value to his cestui, and he fails to prove by clear and convincing proof that he did not breach the fiduciary relationship, a constructive trust should fasten to the property so acquired. Davis v. Hamlin, 108 Ill 39.

 The record in this case fails to sustain defendants' burden of proof and the findings of the court are clearly against the manifest weight of the evidence. Defendant, prior to acquiring the property owed the duty to plaintiff to ascertain that it had no desire or intent to purchase. He knew that this was not so, since he had appointed the committee in December to proceed with the transaction. In purchasing the property in the manner in which he did, he clearly breached his fiduciary obligations, and should not be permitted to retain the fruits of his misfeasance. A decree should therefore be entered, impressing the property described in the complaint with a constructive trust and ordering the defendants to convey to plaintiff all of their right, title and interest therein. Since the defendant, Theda Noble, took title solely as the result of the actions of the defendant, Robert Noble, she stands in the same position as he, and is subject to the decree directing the conveyance.

For the reasons herein expressed, the decree of the Circuit Court of Madison County is reversed and the cause remanded, with directions to the Circuit Court to determine the sums expended by defendants to purchase the property, that upon determining the sums found to have been so expended, it fix a reasonable time within which plaintiff may pay to defendants the sums so determined, and that it further order defendants, upon payment to them of said sums, to convey to plaintiff all of their right, title and interest in and

to the real estate described in plaintiff's complaint, and for such other proceedings as may be consistent herewith.

Decree reversed and remanded with directions.

EBERSPACHER, P. J. and MORAN, J., concur.