582 P.2d 170

Ophelia A. RAESTLE, a widow, Appellant,

v.

John WHITSON, Amelia B. Marglin and Greg Marglin, Appellees.

No. 13582.

Supreme Court of Arizona, In Banc.

July 10, 1978.

George M. Ireland, Prescott, for appellant.

Favour & Quail, P. A. by John M. Favour, Prescott, for appellees.

GORDON, Justice:

Following a trial before the Superior Court of Yavapai County, the court found Ophelia Raestle to be a constructive trustee of real estate, (hereinafter referred to as the Brown homesite, See Appendix) and ordered Raestle to deliver a quit claim deed for the property to Amelia Marglin. Raestle appealed the judgment and order, and we have taken jurisdiction pursuant to rule

47(e), Rules of the Supreme Court, 17A A.R.S.

The parties claimed the land as a result of a long series of events involving their predecessors.[1] Archie Brown, the father of appellee Amelia Marglin, died in 1969 leaving "all of my real property in the State of Arizona, including my mining claim known as 'Maggie Mine', to my daughter Amelia * * *". In July, 1972, appellee moved into the house which Brown had built in 1951 on an unpatented mining claim known as the Black Diamond Claim. Brown had lived in the house from 1951 until his death 18 years later. Subsequent to Brown's death, Carl Raestle applied for a patent pursuant to 30 U.S.C. § 701 et. seq., the Mining Claim Occupancy Act of 1962. In the application, Carl Raestle claimed approximately five acres of the Black Diamond including the Brown homesite. The government issued the patent for the five acres to appellant, Ophelia Raestle, shortly after her husband, Carl Raestle died.

The land comprising the Black Diamond Claim had originally been located as the Daisy Claim by Lena Brown, Archie's wife. When Lena died, Brown gave the house [2] which he had built on the Daisy Claim to Margaret, another daughter. With Brown's approval, Margaret proceeded to relocate the Daisy Claim as the Black Diamond Claim in her own name. Prior to Lena Brown's death, Carl Raestle had married Margaret who later died leaving the Black Diamond Claim to Carl. Carl Raestle subsequently married appellant, Ophelia, and left her the rights to the Black Diamond Claim when he died.

The controlling issue in this case is whether the trial court correctly imposed a constructive trust in favor of appellee Amelia Marglin, Archie Brown's daughter. To properly answer this question requires a further examination of the facts.

Archie Brown first staked out his mining claims in the vicinity of the Black Diamond Claim in 1900, and built his first residence

1. See appendix.

2. This house is now the "Raestle house".

in 1936. The record, however, does not indicate when Carl Raestle came to the area. In Raestle's patent application for the five acres of the Black Diamond Claim, he indicated it had been his principal place of occupancy since 1947. Regardless of the date Carl Raestle first moved to the area, he and Brown were very close friends, and his marriage to Brown's daughter, Margaret, lasted 35 years.

A wash physically separates the Brown homesite from the remainder of the Black Diamond Claim. The foot bridge connecting the two parcels must be used when it rains, because the wash fills with six to eight feet of water. Even though everyone knew the Brown homesite was physically located within boundaries of the Black Diamond Claim, the area was treated as Archie Brown's domain. With the aid of Raestle, Brown built his house there, paying for the materials himself. He paid the personal property taxes on his structures, and had separate utility service. After Brown's death, appellee paid the taxes on the improvements.

For years Brown and Raestle attempted to patent six mining claims, including the Black Diamond. Although four of the claims belonged to Raestle, they submitted the application for all six in Brown's name. The two had agreed to transfer the Brown homesite to Archie in exchange for a homesite on one of Brown's claims, the Bellia, as soon as the mineral patents for the land were granted. However, the applications were still pending at Brown's death in 1969.

When Brown died, appellee petitioned the court to appoint Raestle, rather than her brother, as the administrator of the estate. She apparently took this action because the brother, together with a third person, had been trying to take the Maggie Claim from Brown. Following a contested hearing, the court appointed Raestle as the administrator. The only action which he took after his appointment as administrator was to advise appellee to refile on the Maggie and Bellia claims, so that if the probate took too long, no one else could "jump the claims". Since appellee resided in California at that

time, Raestle helped her process the paperwork for the claims. Except for this action, there is no evidence in the record of Raestle doing anything else in furtherance of the probate. When Raestle died in 1972, the probate file was still open, and the court appointed appellee as the administratrix.

We begin our analysis of these facts with the general premise that a land patent is the highest evidence of title and is immune from collateral attack. *State v. Crawford*, 7 Ariz.App. 551, 441 P.2d 586 (1968); *Dredge Corporation v. Husite Company*, 78 Nev. 69, 369 P.2d 676 (1962); *Martinez v. Mundy*, 61 N.M. 87, 295 P.2d 209 (1956). This rule, however, does not preclude a court from imposing a constructive trust upon the patentee for the benefit of the owner of an equitable interest. *Kennedy v. Morrow*, 77 Ariz. 152, 268 P.2d 326 (1954); *Perry v. McConkie*, 1 Utah 2d 189, 264 P.2d 852 (1953).

Because of the variety of circumstances in which a constructive trust has been imposed, the doctrine has remained flexible. As Justice Cardozo explained:

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.

\*       \*       \*       \*       \*       \*

"A court in equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380–381 (1919); *Condos v. Felder*, 92 Ariz. 366, 370, 377 P.2d 305, 307 (1962).

At the time Carl Raestle applied for the patent pursuant to the Mining Claim Occupancy Act, he had not relinquished his appointment as the administrator of Archie Brown's estate. Thus, he still remained in a fiduciary relationship to the estate and Brown's beneficiaries. *In Re Sullivan's Estate*, 51 Ariz. 483, 78 P.2d 132 (1938);

*Stump v. Flint*, 195 Kan. 2, 402 P.2d 794 (1965); *Nathanson v. Superior Court of Los Angeles County*, 12 Cal.3d 355, 115 Cal. Rptr. 783, 525 P.2d 687 (1974).

Significantly, we are not here concerned with the question of whether a constructive trust would have been imposed if Carl Raestle had not abandoned the original plan to obtain mineral patents on all six claims before exchanging the properties. Pursuant to the original plan, Carl Raestle would have received a patent to the land based on the mineral content and his mining development of the Black Diamond Claim. *See* 30 U.S.C. §§ 29, 38. However, in 1971 a person from the Bureau of Land Management notified Raestle that the Mining Claim Occupancy Act would expire on June 30, 1971. Consequently, on April 26, 1971, Raestle applied for a patent as authorized by the Mining Claim Occupancy Act. A prerequisite for this type of patent is for the applicant to release to the United States all mineral claims to the land. The United States, in turn, reserves in itself the mineral interests for the term of the estate granted. 30 U.S.C. § 707.

The Mining Claim Occupancy Act states, in relevant part:

§ 701. Authorization to convey; acreage limitations; qualified applicants; payment; * * *

"The Secretary of the Interior may convey to any occupant of an unpatented mining claim which is determined by the Secretary to be invalid an interest, up to and including a fee simple, in and to *an area within the claim of not more than (a) five acres or (b) the acreage actually occupied by him, whichever is less.* The Secretary may make a like conveyance to any occupant of an unpatented mining claim who, after notice from a qualified officer of the United States that the claim is believed to be invalid, relinquishes to the United States all right in and to such claim which he may have under the mining laws. *Any conveyance* authorized

by this section, however, *shall be made only to a qualified applicant,* as that term is defined in section 702 of this title, who applies therefor within the period ending June 30, 1971, and upon payment of an amount established in accordance with section 705 of this title.

\*     \*     \*     \*     \*     \*

§ 702. 'Qualified applicant', defined

"For the purposes of this chapter a qualified applicant is a residential occupant-owner, as of October 23, 1962, of valuable improvements in an unpatented mining claim which constitute for him a principal place of residence and which he and his predecessors in interest were in possession of for not less than seven years prior to July 23, 1962." (Emphasis added.)

These provisions demonstrate that the right to this type of patent arises not from the mineral exploration of a mining claim, but rather from the presence of "valuable improvements in an unpatented mining claim" which constitute a principal place of residence. 30 U.S.C. § 702. In Raestle's application he not only listed his house and the improvements surrounding it, but also listed the house in which Archie Brown had lived,[3] its well, and a storage cabin nearby. Appellant has not disputed the fact that Archie Brown, not Carl Raestle, was the "occupant-owner, as of October 23, 1962," of the improvements on the Brown homesite, *see* 30 U.S.C. § 702, even though at that time the unpatented mining claim remained vested in Carl Raestle.

■ In summary, a mere two months prior to the expiration of the Mining Claim Occupancy Act, Carl Raestle applied for a patent citing improvements made by Archie Brown, and relinquishing his rights to the minerals on the land in dispute. During this period, Raestle remained the administrator of Brown's estate, charged with the fiduciary duty of protecting all of Brown's property. In this situation, we believe

3. Although Brown was deceased at the time of the application, 30 U.S.C. § 708 provides, "Rights and privileges to qualify as an appli-

cant under this chapter shall not be assignable, but may pass through devise or descent".

Raestle had the duty to apply for a patent on the Brown homesite for the heirs of Brown, rather than using Brown's improvements as a means of benefiting himself.

■ The Restatement of Restitution, § 194 (1937) succinctly states the rule to be followed in this circumstance, "A fiduciary who purchases from a third person for himself individually property which it is his duty to purchase for the beneficiary holds it upon a constructive trust for the beneficiary". *See also Guerin v. American Smelting & Refining Co.*, 28 Ariz. 160, 236 P. 684 (1925); *Maish v. Valenzuela*, 71 Ariz. 426, 229 P.2d 248 (1951); *Sanford v. Sanford*, 139 U.S. 642, 11 S.Ct. 666, 35 L.Ed. 290 (1891); *Davis v. Jenkins*, 236 N.C. 283, 72 S.E.2d 673 (1952); *Mile-O-Mo Fishing Club, Inc. v. Noble*, 62 Ill.App.2d 50, 210 N.E.2d 12 (1965). Accordingly, the trial court correctly imposed a constructive trust on the Brown homesite in favor of Archie Brown's daughter, Amelia Marglin.

Judgment of the Superior Court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concur.

## APPENDIX

### Chronology

**1900**

Archie Brown locates Maggie Claim.

**Approximately 1930**

Margaret Brown (Archie's daughter) marries Carl Raestle.

**Prior to 1951**

Ground held under location by Lena Brown (Archie's wife) and house built by Archie Brown.

**1951**

Following death of Lena Brown, Archie Brown gives house to Margaret Brown Raestle. Margaret relocates Daisy Claim as Black Diamond Claim.

Archie Brown builds house on Brown homesite and continues residence on east side of wash and pays taxes on improvements until death.

**1964**

Death of Margaret Brown Raestle.

Probate of Margaret Brown Raestle Estate set over to Carl Raestle.

**1965**

Mineral patent application by Archie Brown on six claims.

Carl Raestle moves to Prescott.

**1966**

Carl Raestle marries appellant, Ophelia.

**1968**

Carl Raestle and appellant, Ophelia, move to Black Diamond homesite.

**1-1-69**

Archie Brown dies leaving all real property to Amelia Marglin, appellee, his daughter.

**1969**

Appellee, Amelia Marglin, pays taxes on Brown homesite improvements and each year thereafter.

**7-10-69**

Will of Archie Brown admitted to probate and Carl Raestle appointed Administrator.

**4-30-71**

Patent application by Carl Raestle on Black Diamond Claim, which includes Brown homesite.

**7-12-72**

Appellee, Amelia Marglin, moves to Brown homesite and resides continuously thereafter.

**8-3-72**

Death of Carl Raestle.

**1-8-73**

Probate of Carl Raestle Estate set over to appellant, Ophelia Raestle.

**3-20-73**

Patent on Black Diamond including Brown homesite issued to Carl Raestle.

**3-27-73**

Appellant records patent.

**1975**

Marglin's goat devours Raestle's roses and pomegranate tree, suit instituted.